# HEENAN & COOK
## TRIAL LAWYERS

John Heenan | Joseph P. Cook
1631 Zimmerman Trail, Billings MT 59102
Ph: (406) 839-9091 Fax: (406) 839-9092

May 16, 2023

*Via Email:* megan.schall@libertymutual.com

Megan Schall
Safeco Insurance

  Re:  Our Client:  Myles McKenzie
      Date of Loss: 09/28/2022
      Claim No.:  051053834

Dear Ms. Schall and All Insurance Company Decision-Makers:

The following is a settlement demand on behalf of our client, Myles McKenzie ("**Mr. McKenzie**" or "**our client**"), for personal injuries that he sustained in an automobile vs. bicycle collision on September 28, 2022, involving Edison Webb ("**Mr. Webb**" or "**your insured**"). Based on the totality of the facts at hand, we contend that your insured has full liability for our client's resulting injuries, harms, and losses.

This demand is prepared in an attempt to resolve our client's claim and is a privileged settlement communication under Mont. R. Evid. 408. This demand is not intended for use in future litigation without our consent. No information contained herein should be considered a factual or legal admission by our client.

**We also ask that this demand be immediately forwarded to all insurance company decision-makers and, of course, the insured policyholder.**

## 1. FACTS & LIABILITY

On September 28, 2022, Mr. McKenzie was operating his bicycle traveling northbound on a sidewalk on South 11th Avenue in Bozeman, Gallatin County, Montana. At the same time, Mr. Webb was the driver of a vehicle traveling northbound on South 11th Avenue. Suddenly and without warning, Mr. Webb attempted to make a left turn into a parking lot near the 1700 Block of South 11th Avenue and struck Mr. McKenzie. The collision resulted in Mr. McKenzie sustaining significant personal injuries and other damages.

As exposed in the Bozeman Police Department Crash Name Exchange, Officer Anthony Taylor of the Bozeman Police Department investigated the collision. While Office Taylor did not indicate that Mr. Webb was the sole party responsible for the collision, it is clear from the facts and circumstances of the collision that Mr. Webb was the sole contributor to the collision due to his failure to operate his vehicle in a careful manner.[1]

**The conditions for establishing liability, in this case, are clear**. Mr. Webb owed a duty of care to the other drivers and pedestrians on the road. Pursuant to **Montana Code § 61-8-302(1)**, "[a] person operating or driving a vehicle on a public highway shall drive it in a careful and prudent manner that does not unduly or unreasonably endanger the life, limb, property, or other rights of a person entitled to the use of the highway." On the date of loss, Mr. Webb lacked attentiveness, lacked all due care, failed to operate his vehicle in a careful manner, and caused a collision with Mr. McKenzie's bicycle. As a result of Mr. Webb's acts and/or omissions on September 28, 2022, Mr. McKenzie suffered significant personal injuries and damages for which Mr. Webb is undoubtedly liable.

As evidenced by the photographs below, **the collision resulted in significant bodily injury**.[2]

---

[1] Exhibit 1 - Bozeman Police Department Crash Name Exchange

[2] Exhibit 2 - Bodily Injury Photographs



## 2. INJURIES & TREATMENTS

### 2.1. Summary of Injuries

We have enclosed all pertinent medical information regarding Mr. McKenzie's injuries. These injuries were suffered as a direct and proximate result of this incident. The chart below represents a non-exhaustive summary of the injuries sustained by our client:

| ICD Code | Description |
|:---:|:---:|
| S02.5 | Fracture of Tooth (Traumatic) |
| S03.2XXA | Dislocation of Tooth |

## 2.2. Treatment

| **James Russell Bond D.M.D., P.C.** | |
|---|---|
| Treatment Timeline | September 29, 2022 - May 9, 2023 |
| Number of Visits | 6 |
| Summary | <ul><li>On September 29, 2022, Mr. McKenzie presented to James Russell Bond, D.M.D., P.C., for a consultation and treatment. During the initial consultation, Mr. McKenzie reported feeling like all of his teeth were loose. Dr. Bond ordered a CBCT scan of Mr. McKenzie's mouth, which revealed, in relevant part, the following:<ul><li>**CBCT Scan of the Mouth**:<ul><li>**Trauma to the upper maxillary teeth anterior with what appeared to be a lateral subluxation of tooth number nine.**</li><li>**Tooth number 8 had a prior root canal that appeared to have been fractured, along with slight lateral subluxation.**</li></ul></li></ul></li><li>Dr. Bond also noted that Mr. McKenzie had severe swelling and bruising of his upper lip due to trauma, which resulted in limited jaw opening. An intraoral evaluation also showed enamel fractures of teeth numbers eight and nine, with number nine having a subgingival fracture. After a clinical examination and review of his diagnostic imaging results, Dr. Bond diagnosed Mr. McKenzie with several tooth fractures. Dr. Bond recommended splinting Mr. McKenzie's teeth to allow healing of the alveolus and root complex. Dr. Bond also opined that one or more of Mr. McKenzie's teeth would need to be removed and replaced with an implant. An OPTi bond was placed from canine tooth to canine tooth within Mr. McKenzie's mouth. Dr. Bond prescribed Mr. McKenzie Chlorhexidine mouthwash</li></ul> |

and advised him to return in two weeks to potentially remove the splint.

- On October 19, 2022, Mr. McKenzie returned to Dr. Bond for a progress examination. Upon arrival, Mr. McKenzie reported that he felt well aside from his UL incisor being sensitive to hot and cold. Dr. Bond ordered a CT and Neoss scan of Mr. McKenzie's mouth. After an examination and a review of his diagnostic imaging results, Dr. Bond removed the bond from the upper anterior with a high-speed handpiece and noted that tooth number 9 showed no signs of healing. Dr. Bond recommended that Mr. McKenzie receive a teeth cleaning, which Mr. McKenzie underwent during his visit.

- On October 27, 2022, Mr. McKenzie returned to Dr. Bond for a progress examination. After a clinical examination. Dr. Bond opined that Mr. McKenzie's teeth numbers 8 and 9 were non-restorable and would need to be extracted, but that he was too young to receive implants and would need to receive implants once he turned 21. Dr. Bond also stated that Mr. McKenzie's lateral incisors would need to be evaluated more thoroughly to determine if they would require any treatment as well. Mr. McKenzie underwent the extraction of teeth numbers 8 and 9 and was given an Essix flipper.

- On November 8, 2022, Mr. McKenzie returned to Dr. Bond for a progress examination. Upon arrival, Mr. McKenzie stated that the exit sites from teeth numbers 8 and 9 felt good, but that he noticed pressure when wearing the Essix flipper. After a clinical examination, Dr. Bond adjusted the flipper and took scans for a valpast partial, which were sent to the bone dental lab for fabrication.

| Supporting Documents | <ul><li>Exhibit 3 - James Russell Bond D.M.D., P.C. - Records</li><li>Exhibit 4 - James Russell Bond D.M.D., P.C. - Bills</li></ul> |
|---|---|

## 3. DAMAGES

### 3.1. Total Projected Claim Value

| Elements of Damages | |
|---|---|
| **Economic Damages** | |
| Past Medical Expenses | $2,300.75 |
| Future Medical Expenses | $9,600.00 |
| Loss of Household Services | $3,279.72 |
| **Non-Economic Damages** | |
| Past and Future Pain and Suffering | $60,000.00 |
| **Total Damages** | **$75,180.47** |

### 3.2. Past Medical Expenses

Mr. McKenzie has incurred medical costs of **$2,300.75** to date.

| Provider | Treatment Period | Amount Charged | Supporting Document(s) |
|---|---|---|---|
| James Russell Bond D.M.D., P.C. | 9/29/2022 - 5/9/2023 | $2,300.75 | Exhibit 4 |
| **Total** | | **$2,300.75** | |

If you claim any of the medical treatment was unnecessary, or any of the bills were unreasonable, please identify in writing which bills you dispute and the factual basis for such dispute. If you dispute them with a qualified expert opinion from a doctor willing to testify, then please provide us with a copy of his report. If not, please confirm in writing that you dispute the bills as an adjuster and not a qualified medical professional. If you do not respond in writing to this report, we will assume you do not dispute the total amount of medical bills.

### 3.3. Future Medical Expenses

Mr. McKenzie continues to experience pain and symptomatology as a result of the injuries sustained in the incident at issue and will require additional treatment moving forward, including but not limited to dental implants. Thus, a conservative estimate of future medical care for Mr. McKenzie is **$9,600.00**.

| Procedure | Years | #/Year | Cost | Total |
|---|---|---|---|---|
| Dental Implants[3] | 1 | 2 | $4,800.00 | $9,600.00 |
| **Total** | | | | **$9,600.00** |

*Note that the costs of healthcare and medication will continue to rise significantly, and we reserve the right to revise our projection for future medicals on this basis, among others. We also note that this estimate is only for one year and could readily be augmented for additional years of medical treatments.*

### 3.4. Loss of Household Services

---

[3] *Goodrx.com*, Online: https://www.goodrx.com/health-topic/procedures/dental-implant-cost

As a result of the incident, we estimate that Mr. McKenzie has been unable to contribute **$3,279.72** in labor in the form of past and future household services. Our calculation rests on three variables:

1. Before his incident, we assume that Mr. McKenzie contributed an average of 0.6 hours of household chores per day to the household, in line with the average contribution of persons of similar age and gender in America.

2. We assume the monetary value of Mr. McKenzie's labor is consistent with the average housekeeping salary of $12.54 an hour in the State of [State], as estimated from the May 2020 report on Occupational Employment and Wages by the US Bureau of Labor Statistics.

3. In our estimation, Mr. McKenzie suffered a 60% impairment from contributing to household chores and will continue to suffer a 60% impairment as they continue to receive treatment and recover over the subsequent year.

Assuming no further impairment of household chores after May 9, 2024, solely for simplicity and convenience of early settlement, we calculate the value of loss of household services between September 28, 2022, and May 9, 2024, at **$3,279.72**.

| Loss of Household Services Schedule | | | | | |
|---|---|---|---|---|---|
| **Start of Loss Date** | **End of Loss Date** | **Hourly Rate** | **Hours Per Day** | **% Impaired** | **Net Loss** |
| 9/28/2022 | 12/31/2022 | $12.54 | 0.60 | 60% | $428.87 |
| 1/1/2023 | 5/9/2023 | $12.54 | 0.60 | 60% | $582.36 |
| 5/10/2023 | 12/31/2023 | $12.54 | 0.60 | 60% | $1,065.40 |
| 1/1/2024 | 5/9/2024 | $12.54 | 1.23 | 60% | $1,203.09 |
| **Total Loss of Household Services** | | | | | **$3,279.72** |

### 3.5. Past and Future Pain and Suffering

Per MCA § 27-1-202, every person who suffers detriment from the unlawful act or omission of another may recover from the person in fault compensation for it in money, which is called damages. The measure of the damages recoverable from the person at fault for the reasonable value of medical services or treatment in actions arising from bodily injury or death is set forth in 27-1-308. (En. Sec. 4270, Civ. C. 1895; re-en. Sec. 6040, Rev. C. 1907; re-en. Sec. 8659, R.C.M. 1921; Cal. Civ. C. Sec. 3281; Field Civ. C. Sec. 1832; re-en. Sec. 8659, R.C.M. 1935; R.C.M. 1947, 17-201.)

The injuries that Mr. McKenzie sustained on September 28, 2022, caused him a great deal of pain and emotional distress, and his ability to enjoy life was significantly reduced. He was not able to physically relax and could not enjoy the simple pleasures in life without the painful reminder of the collision. Prior to the collision, Mr. McKenzie thoroughly enjoyed an active lifestyle and frequently went to the gym, went hiking, running, swimming, and fishing, in addition to going on bike rides and walks, which he has been unable to do since the collision. As his injuries interfered with his physical abilities, he was unjustly imposed with a direct impediment that significantly impacted his ability to go about life as he once lived and adversely affected him physically, emotionally, and mentally. Mr. McKenzie found sleep hard to come by, leaving him feeling fatigued each day and he found it difficult to complete household tasks, such as doing laundry and yard work. Mr. McKenzie also found it difficult to eat after having a splint installed in his mouth and after having two of his teeth extracted. In short, Mr. McKenzie has been forced to endure significant pain and suffering because of this senseless incident. There is no question that a jury would be very empathetic to his situation.

### Verdict Analysis

Based on case results with similar facts, we assert that Mr. McKenzie is entitled to at least past and future pain and suffering damages in the amount of **$60,000.00**. As justification for this claim, we direct your attention to the following:

| *Teresa Zesati v. Interinsurance Exchange of the Automobile Club* | |
|---|---|
| Citation | Verdict Search, Teresa Zesati v. Interinsurance Exchange of the Automobile Club, No. G9262744 |

| | |
|---|---|
| Jurisdiction | Los Angeles County, California |
| Award | $160,000.00 |
| Case Facts | At 4 p.m. on February 5, 2009, claimant Teresa Zesati, 58, unemployed, exited a city bus and walked in the crosswalk at Ramona Boulevard and Peck Road in El Monte. After she cleared the crosswalk, she was struck on her left side by a vehicle, whose driver lost control on the wet roadway. Zesati settled with the driver for their policy limits of $15,000.00. As Zesati claimed greater injury, she continued to binding arbitration with her insurance carrier, Interinsurance Exchange of the Automobile Club (AAA). AAA contended that the impact Zesati suffered was not significant. Zesati and AAA agreed to settle prior to arbitration, through a mediator, for $160,000.00. |
| Injuries | Zesati was taken via ambulance to a local emergency room with complaints of headaches and pain in her neck, back, and abdomen. CT scans of her head, chest, spine, and pelvis were performed and read to be within normal limits. She was discharged the same day. Zesati was subsequently treated by her primary care physician, two chiropractors, an orthopedic surgeon, a dentist, a neurologist, two psychologists, and an ear, nose, and throat doctor. Zesati claimed she suffered left and right TMJ instability, and sustained an alveolus fracture to the left and right in the proximity of tooth numbers 2-5, 13-15, and 29-31; dental fractures to four-unit bridge at tooth numbers 2-5; and dental fractures to three partials at tooth numbers 13-15, 19-21 and 29-31. |

| | |
|---|---|
| | Additionally, Zesati's complaints included headaches, dizziness, post-traumatic stress disorder, sensory loss, temporomandibular joint instability, and pain in her neck, shoulder, and left lower extremity. |
| | AAA claimed that the impact was insignificant since Zesati did not suffer any broken bones, bruises, cuts, or any other physical evidence of injury. AAA also claimed, according to the EMS and ER records, that there was no evidence of loss of consciousness and no objective signs of a concussion and that CT scans and MRIs of the brain were all within normal limits. |
| | AAA argued that Zesati had a preexisting history of headaches, dizziness, and fainting, which were concerning enough that her primary care physician ordered two MRIs of her brain. Both of her prior brain MRIs were read to be within normal limits. |
| | AAA's retained dental expert opined that none of Zesati's dental treatment was related to the incident and that her dental problems were preexisting in nature. The expert also opined that there was no evidence of TMJ instability. |
| Relevance | In both instances, the plaintiff above and Mr. McKenzie suffered painful and significant personal injuries and damages as a result of the reckless, careless, or otherwise negligent conduct of a liable tortfeasor. Like the plaintiff above, Mr. McKenzie suffered several tooth fractures, which required extensive dental care. Mr. McKenzie's injuries made it difficult for him to carry out his activities of daily living, which only added to the mental and physical stress he suffered as a direct result of the incident at issue. In addition, Mr. McKenzie will require future treatment and care including possible dental surgery for tooth implants. |
| | Therefore, we find that this verdict represents a strong benchmark for estimating the minimum amount of compensation a similarly situated jury would award Mr. McKenzie today. |

<u>Per Diem Analysis</u>

Our conservative per diem analysis shows that Mr. McKenzie's claim for past, present, and future pain and suffering is valued at **$64,960.00**. A jury will consider not only Mr.

McKenzie's initial pain and suffering to date but also his subsequent pain and suffering. Below are some very conservative figures we would present to a jury to consider, in addition to his other damages:

- $10.00/hr. for initial pain and suffering from September 28, 2022, to May 9, 2023; and

- $5.00/hr. for subsequent pain and suffering from May 9, 2023, to May 9, 2024.

| Pain & Suffering | |
|---|---:|
| **Initial Pain & Suffering** | |
| Initial Period (in days) | 223 |
| Waking hours / Day | 16.0 |
| Reasonable Compensation / Hour | $10.00 |
| **Total Initial Pain & Suffering** | **$35,680.00** |
| **Subsequent Pain & Suffering** | |
| Subsequent Days with Pain | 366 |
| Waking Hours / Day | 16.0 |
| Reasonable Compensation / Hour | $5.00 |
| **Total Subsequent Pain & Suffering** | **$29,280.00** |
| **Total Pain and Suffering** | **$64,960.00** |

In light of the per diem analysis above, we assert that **$60,000.00** is fair and equitable compensation for Mr. McKenzie's initial and subsequent pain and suffering.

**4. DEMAND TO SETTLE**

There is no question that Mr. McKenzie has sustained serious injuries and incurred substantial damages as a result of your insured's negligence on September 28, 2022.

These damages include significant past medical bills, anticipated future medical care, loss of household services, and, most importantly, a significant amount of physical and mental pain and suffering (which is ongoing).

We believe that Safeco Insurance has sufficient information at this time to value our client's claims as stated. At this time, in order to avoid costly and time-consuming litigation, our client has given us permission to make a settlement demand in the amount of **$75,180.47**. Please respond within 15 days of receipt of this demand.

Thank you for your courtesy and attention in this matter.

Sincerely,

Merry Marr

## **Exhibit List**

| Exhibit No. | Description |
|---|---|
| 1 | Bozeman Police Department Report |
| 2 | Bodily Injury Photographs |
| 3 | James Russell Bond D.M.D., P.C. - Records |
| 4 | James Russell Bond D.M.D., P.C. - Bills |